# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SCOTT A. METCALF,
      Plaintiff,

    v.                                    Case No. 10-C-0615

RUTH DONALDS, et al.,
      Defendants.

---

## DECISION AND ORDER

Scott Metcalf alleges that the defendants deprived him of liberty without due process of law when they caused him to be detained for 109 days following his release from prison. Before me now is the defendants' motion for summary judgment.

## I. BACKGROUND

In 2001, Metcalf was convicted in Kenosha County Circuit Court of a number of offenses, including second-degree sexual assault of a child. On December 19, 2009, Metcalf finished serving his prison term and was released into the custody of the Wisconsin Department of Corrections's Division of Community Corrections ("DCC") to begin serving two concurrent ten-year terms of probation that were consecutive to his prison term. Because Metcalf had been convicted of sex offenses, he was classified under state law as a special bulletin notification ("SBN") sex offender. This meant that the DCC was required to notify law enforcement officials in the community in which Metcalf was being released of the fact of his release. See Wis. Stat. § 301.46(2m). It also meant that the DCC was subject to certain restrictions when deciding where it would "place" Metcalf. Generally, state law requires that sex offenders be placed in either the county in which the offender

resided on the date of the offense or the county in which the offender was convicted. See Wis. Stat. § 301.03(20). Metcalf was convicted in Kenosha County, and so the DCC placed him there.

At the time of Metcalf's release, eleven of the thirteen municipalities in Kenosha County had sex-offender ordinances in force. These ordinances placed severe restrictions on where sex offenders could live, and this made it difficult for sex offenders on probation or parole in Kenosha to find housing. However, the conditions of a sex offender's probation or parole usually require that he have appropriate housing—he cannot be homeless. See Defs.' Prop. Findings of Fact ¶¶ 16–18, ECF No. 41. In order to reconcile this housing requirement with the lack of housing options in Kenosha, defendant Ruth Donalds, the field supervisor at the DCC's Kenosha office, implemented a procedure for handling sex offenders who had not located appropriate housing by the date of their release. See Donalds Aff. Ex. C, ECF No. 42-3. Under that procedure, the offender is transported on the day of his release from prison to the DCC's offices in Kenosha. The DCC provides the offender with a cell phone, information on possible residences for rent, pen and paper, and other resources for locating appropriate housing. The offender is then allowed to call landlords from the lobby of the DCC's offices. If by 5:00 p.m. the offender has not found an approved residence and the DCC has no other housing alternatives in the community, the offender is transported to the Kenosha County Jail for the night. In the morning, the offender is transported back to the DCC's offices, where he continues his search for housing. If by 5:00 p.m. that day the offender has still not found a residence, he is returned to the Kenosha County Jail. This process continues until the offender finds appropriate housing. The offender spends weekdays at the DCC's offices and nights,

weekends, and holidays in the Kenosha County Jail. In 2009, when Metcalf was released from prison, it took anywhere from two months to a year for sex offenders in Kenosha to find approved housing.

The DCC's authority to detain an offender until he finds appropriate housing stems from Wisconsin Administrative Code § DOC 328.22 . The relevant portion of that provision states that a DCC agent can take a "client" (i.e., the person on probation or parole) into custody and detain him or her for one of four reasons: (1) investigating an alleged probation or parole violation, (2) determining whether to commence revocation proceedings, (3) disciplining the client, and (4) preventing a possible probation or parole violation. Wis. Admin. Code § DOC 328.22(2). The agent may authorize up to five days' detention for any of these reasons other than disciplining the client. Id. § DOC 328.22(3). The agent's supervisor may approve an additional five days' detention, and the regional chief may approve up to five more. Any further detention must be authorized by the administrator of the DCC. Id.

It is the state-wide policy of the DCC to use the authority granted by § DOC 328.22 to detain SBN sex offenders who have not found appropriate housing. See Wisconsin Department of Corrections, Division of Community Corrections Administrative Directive No. 02-10; Donalds Aff. Ex. B, ECF No. 42-2. The DCC's position is that such detention is necessary to prevent a possible probation or parole violation by the client. Id. The policy that Donalds implemented in Kenosha was based on this state-wide policy.

Defendant Sarah Thiermann is Metcalf's probation agent. On December 15, 2009, in anticipation of Metcalf's release, Thiermann and Donalds participated in a conference call with Metcalf while he was still in prison. During the call, Thiermann and Donalds

3

informed Metcalf of the Kenosha County ordinances and told him that if he did not find an approved residence by the date of his release he would be allowed to search for housing during the day at the DCC's offices and would be housed in the Kenosha County Jail during nights and weekends. They discussed the possibility of Metcalf's living with relatives and encouraged Metcalf to apply for an interstate transfer to Nebraska, where Metcalf's mother lived. Metcalf decided not to apply for the transfer to Nebraska because his children and the rest of his family and friends were located in Kenosha County. He also thought that there was a chance he could live with his brother or in an apartment located in a building his brother's ex-wife owned.

On December 16, 2009, Metcalf's brother, Jay, called Thiermann to inquire about Metcalf's housing options. Jay offered to allow Metcalf to live with him, but Jay was himself on probation or parole, and his residence did not satisfy the requirements of the applicable sex-offender ordinance. Thiermann and Jay also discussed the possibility of Metcalf's living with Jay's ex-wife, but Thiermann rejected that option on the ground that Metcalf could not reside with individuals who were not immediate family members. According to Thiermann, Jay did not tell her that his ex-wife had a separate apartment that Metcalf could have rented.

When Metcalf was released on December 21, 2009, he did not have an approved residence. Thus, he was transported from prison to the DCC's offices to begin his search for housing. Because Metcalf had not found housing by the end of the day, he was transported to the Kenosha County Jail for the night. The next morning, he was transported back to the DCC's offices to resume his search. This process continued in accordance with the Kenosha DCC's usual procedure.

4

Case 2:10-cv-00615-LA   Filed 06/07/12   Page 4 of 13   Document 63

On January 5, 2010, Thiermann and Donalds made a request to transfer Metcalf to Racine County so that he could live with his nephew. Upon receiving this request, the Racine office of the DCC went to Metcalf's nephew's house to conduct a residence assessment. At the conclusion of the assessment, the Racine DCC rejected the transfer on the ground that the residence contained alcohol and a computer and was within two blocks of a daycare and a park. The Racine DCC also thought that Metcalf's nephew "minimized" Metcalf's offense.

On January 11, 2010, Metcalf reconsidered the option of a transfer to Nebraska and decided to talk to his mother about moving in with her. By February 4, 2010, Metcalf had decided that he wanted to move to Nebraska, and so Thiermann submitted a request to Nebraska for approval of the transfer. Nebraska accepted the request, and on April 9, 2010, Metcalf departed for Omaha, Nebraska. Metcalf continues to reside in Nebraska with his mother under the supervision of the State of Nebraska.

## II. DISCUSSION

Metcalf contends that his detention for 109 days following his release deprived him of liberty without due process of law. He brings this action pursuant to 42 U.S.C. § 1983. The defendants have raised several issues in their motion for summary judgment, which I address below.

### A. Identifying the Proper Defendants

Before proceeding further, I note an anomaly in the caption of this case. When Metcalf filed his amended complaint, he named four defendants—the Wisconsin Department of Corrections and three employees of the DCC sued in their individual

5

Case 2:10-cv-00615-LA    Filed 06/07/12    Page 5 of 13    Document 63

capacities (Sarah Thiermann, Ruth Donalds, and Lisa Yeates). When the defendants filed their motion for summary judgment, they argued that the Wisconsin Department of Corrections was not an appropriate defendant because state agencies are not proper defendants in suits under § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that states and state officials are not "persons" under § 1983); Leavell v. Ill. Dep't of Nat. Res., 600 F.3d 798, 808 n.6 (7th Cir. 2010) (recognizing that Will applies to suits against state agencies). In his brief in opposition to the defendants' motion for summary judgment, Metcalf did not dispute that the Wisconsin Department of Corrections was not a proper defendant. He also deleted the Wisconsin Department of Corrections from the caption of his brief and supporting papers. However, Metcalf also added a new name to the caption: "Barbara Hansen, in her individual capacity." Metcalf does not explain in his brief or in any other paper who this person is or why he added her to the caption. He has not amended his complaint to include any allegations against her, and as far as I know she has not been served with process. Thus, despite what it says on the caption of Metcalf's brief and supporting papers, Barbara Hansen is not a defendant in this case. Moreover, the Wisconsin Department of Corrections will be dismissed from this case on the ground that it is not a "person" under § 1983.

**B.      Heck v. Humphrey**

Defendants argue that this case should be dismissed pursuant to the rule announced in Heck v. Humphrey. In Heck, the Supreme Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,

6

a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994) (footnote omitted). In the present case, there are a number of questions that would have to be resolved before it could be determined whether Metcalf's claim is barred by Heck. First, would a victory by Metcalf imply that his detention was invalid? Cf. Heck, 512 U.S. at 482–83 (reasoning that "using the wrong procedures" does not necessarily "vitiate[]" a term of confinement). Second, even if Metcalf's victory would imply that his detention was invalid, does Heck even apply to detention pursuant to a temporary probation hold, as opposed to detention pursuant to a conviction or some other form of legal process? Cf. Antonelli v. Foster, 104 F.3d 899, 900–01 (7th Cir. 1997) (noting that Heck applies only to "confinement pursuant to some legal process"). Third, does the fact that Metcalf is no longer subject to the probation hold remove any Heck problem? See DeWalt v. Carter, 224 F.3d 607, 613–18 (7th Cir. 2000) (holding that suit under § 1983 was not Heck-barred where plaintiff no longer had ability to challenge his confinement using petition for habeas corpus). However, as explained in the next section of this opinion, Metcalf is not entitled to relief even if his claims are not barred by Heck. Therefore, rather than resolving the issues relating to the Heck doctrine, I will bypass them and proceed to the merits of Metcalf's claim. See Polzin v. Gage, 636 F.3d 834, 838 (7th Cir. 2010) (holding that "district courts may bypass the impediment of the Heck doctrine and address the merits of the case").

**C.    Procedural Due Process**

7

For purposes of this opinion, I assume that Metcalf's detention in the Kenosha County Jail and the DCC's offices between December 21, 2009 and April 9, 2010 deprived him of a liberty interest. The question is whether Metcalf was deprived of this liberty interest without due process of law. Thus, I must apply the formula set forth in Mathews v. Eldridge, under which I weigh several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976). This formula is "a simple cost-benefit test" in which the court "compar[es] the benefit of the procedural safeguard sought, which is a function of the value of the . . . interest at stake and the probability of erroneous deprivations if the safeguard is not provided, with the cost of the safeguard." Sutton v. City of Milwaukee, 672 F.2d 644, 645 (7th Cir. 1982).

Metcalf contends that I do not need to apply the Mathews formula to this case because the Supreme Court already performed the relevant cost-benefit analysis and identified the process that he was due in Morrissey v. Brewer, 408 U.S. 471 (1972). However, Morrissey only establishes the process that must be afforded to a parolee before his parole may be revoked. See id. at 472. It is undisputed that the defendants did not initiate revocation proceedings against Metcalf and that Metcalf was not being detained pending a revocation hearing, and thus Morrissey does not answer the question before me. To determine what process Metcalf was due, then, I must apply the Mathews formula. See Faheem-El v. Klincar, 841 F.2d 712, 725 (7th Cir. 1988) (en banc) (using Mathews

8

formula to determine what process was due in parole-detention context); accord Atkins v. City of Chicago, 631 F.3d 823, 827–28 (7th Cir. 2011); Westefer v. Snyder, 422 F.3d 570, 587 (7th Cir. 2005); Parra v. Perryman, 172 F.3d 954, 958 (7th Cir. 1999).

In order to apply the Mathews formula, I must first identify the precise contours of the procedural safeguard that Metcalf contends he was due. Metcalf does not contend that he was entitled to a hearing at which he could have challenged the terms of his probation that required him to have approved housing. Nor does he contend that he was entitled to a hearing at which he could have challenged the defendants' decision to detain him in the Kenosha County Jail rather than allow him to be homeless. Instead, he contends that he was entitled to an opportunity to demonstrate to some independent officer that there were reasonable housing alternatives available in the community. Specifically, he contends that he was entitled to a hearing in order to challenge the disapproval of specific housing options, such as Metcalf's brother's home, Metcalf's brother's ex-wife's apartment, and Metcalf's nephew's home. See Pl.'s Br. in Opp. at 18, ECF No. 47.

In arguing for a hearing at which he could have challenged the defendants' disapproval of specific housing options, Metcalf ignores the process that is already available under state law. Wisconsin Administrative Code § DOC 328.11 establishes a complaint process that may be used by any client to "review a decision which affects the client personally." Wis. Admin. Code § DOC 328.11(3). A client initiates this process by filing a complaint with a probation or parole agent. Id. § DOC 328.11(5). The agent then attempts to informally resolve the complaint with the client. If no formal resolution is reached, the client may file a written request for review with the agent's supervisor. The supervisor will then conduct an investigation and issue a written decision. Id. § DOC

9

328.11(6). If the client is still dissatisfied, he may appeal the supervisor's decision to the regional chief. The regional chief then conducts his or her own investigation and issues a written decision. Id. § DOC 328.11(7). If the client is still dissatisfied, he may appeal the regional chief's decision to the administrator of probation and parole, who makes the final decision. Id. § DOC 328.11(8). The complaint process sets short time limits for the decisionmakers to complete their review, and it includes a provision allowing expedited review when needed. Id. § DOC 328.11(10).

Metcalf could have used the complaint process established by § DOC 328.11 to challenge the decisions concerning his housing options.[1] For example, when the Racine DCC determined that Metcalf's nephew's house was not an appropriate housing option, Metcalf could have filed a complaint under § DOC 328.11(5) and specified the reasons he disagreed with the Racine DCC's decision. In his brief, Metcalf states that if he had been afforded a hearing he would have challenged specific factual findings made by the Racine DCC—namely, that the house contained alcohol and that it contained a computer he would have had access to. See Br. in Opp. at 18, ECF No. 47. Although Metcalf was not afforded such a hearing, if he would have filed a complaint challenging those factual

---

[1] I note that § DOC 328.11 cannot be used to challenge decisions concerning "custody and detention." Wis. Admin. Code § DOC 328.11(4)(b). However, a decision disapproving a residence is not a decision concerning custody and detention. Although a decision disapproving a residence might precipitate a second decision concerning custody and detention, the decisions would be separate: an agent would first decide to disapprove the residence, and then the same agent or (as here) a different agent would decide whether the disapproval of the residence required the client to be detained. Thus, the first decision would be reivewable under § DOC 328.11. I also note that the defendants, who are represented by the Wisconsin Department of Justice, concede that a decision disapproving a residence is reviewable under § DOC 328.11. See Reply Br. at 12, ECF No. 59.

10

findings under § DOC 328.11, then either an agent or a supervisor could have conducted an investigation that included interviewing Metcalf and other witnesses. If Metcalf was dissatisfied with the agent's and field supervisor's decisions, he could have taken further appeals.

Because this complaint process was available to Metcalf, the question in this case is whether due process required more process than what was available under § DOC 328.11. Metcalf does not discuss § DOC 328.11 in his brief, and so I do not know whether he thinks its procedures were constitutionally insufficient. However, it is probably safe to say that he would think those procedures were insufficient because they did not include an opportunity for an in-person, adversarial hearing before some independent officer. Whether Metcalf would be right turns on whether, under the Mathews formula, the benefits of a such a hearing would outweigh the costs. And on the present record, it is difficult to determine whether the benefits of a hearing would outweigh the costs, since the parties have not made an effort to quantify the benefits and the costs. For example, I do not know whether the complaint mechanism has, in practice, proved to be a reliable method for resolving factual disputes between a client and his probation or parole agent over the appropriateness of specific housing options. Moreover, assuming that an in-person, adversarial hearing before an independent officer would be more reliable than the complaint process, I do not know whether the gain in reliability would outweigh the cost to the DCC of providing those hearings. Thus, on the present record, I cannot determine whether due process required a hearing in addition to or in lieu of the process available under § DOC 328.11.

11

However, it turns out that I do not need to answer this question. Even if I determined that due process required a hearing, Metcalf would not be entitled to any relief. The question of whether due process required a hearing in addition to or in lieu of the process available under § DOC 328.11 is novel, and so the defendants are protected from liability for damages by qualified immunity. See Pearson v. Callahan, 555 U.S. 223 (2009) (district court has discretion to decline to answer constitutional question when defendant would be entitled to qualified immunity anyway); Atkins, 631 F.3d at 829 (declining to answer novel procedural-due-process question on ground that defendants would be entitled to qualified immunity anyway). Although Metcalf also asks me to declare that the Wisconsin Administrative Code provision that was used to detain him, § DOC 328.22(2), is unconstitutional on its face because it allows detention without a hearing, he has sued no defendant with state-wide authority over DOC or DCC policy, and so a declaratory judgment stating that § DOC 328.22(2) is unconstitutional on its face would bind no person with authority to suspend its use. Accordingly, this is not an appropriate case for declaratory relief. See Medical Assur. Co., Inc. v. Hellman, 610 F.3d 371, 377-78 (7th Cir. 2010) (district court has discretion under Declaratory Judgment Act to decline to declare the parties' rights). Another problem is that Metcalf has been transferred to Nebraska and, as far as the record reveals, does not intend to return to Wisconsin, and so he likely does not have standing to challenge § DOC 328.22(2) on its face. See Schirmer v. Nagode, 621 F.3d 581, 585–88 (7th Cir. 2010) (plaintiff can pursue facial challenge to law only if he has sufficient reason to fear that law will be applied to him in future).

12

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motions to file briefs in excess of the page limits are **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for oral argument is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin this 7th day of June 2012.

s/ Lynn Adelman
LYNN ADELMAN
District Judge

13